# Norris's Estate (No. 1).

*Will—Construction—Devise—Trusts and trustees.*

Testator by his will created a spendthrift trust in favor of his son J. in one-sixth of a particular tract of land. He gave the remaining five-sixths to trustees for his other five sons, C., S., I., G. and H. H. survived all the others and died without issue. It was provided in the will that if "H. shall die without leaving a child or children or a grandchild or grandchildren living at his death then that one of the said five-sixth parts of the lands . . . . shall go to and be equally divided among my said other sons C., S., I. and G., or such of them as shall be then living and the trustees hereinafter mentioned for my said son·J. in equal parts so that the then survivors of my said four sons C., S., I. and G. shall each take one equal share and the trustees for my said son J. shall take the other equal share thereof, each of which said equal shares shall pass to and·vest in the trustees herein appointed and their heirs, respectively, subject to the restrictions and limitations and for the uses herein declared in like manner as if the same had been so devised in the first instance, that is to say, the trustees for my said sons C., S., I., G. and H. to take in trust for the use of my said sons C., S., I. and G. in equal parts and for the uses hereinbefore mentioned and the trustees for my said son J. to take the trust for the like uses that hereinafter mentioned." *Held,* that the trustees of J. took the whole interest of H. to the exclusion of the descendants of the other brothers.

Mestrezat, J., dissents.

Argued Jan. 22, 1907. Appeals, Nos. 361, 362, 363, 364, 365, 366, 367, 368 and 369, by Orville Horwitz, Elizabeth Norris, Franklin A. Dick, Leilla H. Sharpless, Mary Garesche Norris, George W. Norris, assignee of Alexander G. Norris, George W. Norris, Holstein DeHaven, assignee of Lamar Fisher, and George Quintard Horwitz, from decree of C. P. No. 3, Phila. Co., Assignees' and Trustees' Docket F. (O: C. P.)

1863–1869, No. 28, dismissing exceptions to auditor's report In the Matter of the First and Final Account of Henry Norris, Trustee of the Fairhill Estate of Henry Norris under the will of Joseph Parker Norris, the elder, deceased, filed by his executors, J. Parker Norris and Holstein DeHaven. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Exceptions to report of John M. Scott, Esq., auditor.

In addition to the facts stated in the opinion of the Supreme Court, it appeared that the spendthrift trust in favor of Joseph Parker Norris, created by the will of his father, was as follows:

"Item. I do hereby give and devise unto my executors hereinafter named and the survivors and survivor of them and the heirs of such survivor the other and remaining one full equal and undivided sixth part (the whole into six equal parts to be divided) of and in all and singular my said Lands Tenements and Premises called Fairhill in trust to let and demise the same for the best Rent that can be gotten therefor and to take collect and receive the said Rents Issues and Profits thereof as the same shall become due and payable and the nett annual Rents and income thereof after paying thereout one sixth part of the Taxes of the said premises and of all necessary and proper repairs and one like sixth part of my said wife's annuity and also all the Costs and charges attending the execution of this trust to pay apply and dispose of to and for the maintenance and support and benefit of my son Joseph Parker Norris junior for and during all the term of his natural life in such way and manner however as that the same or any part thereof shall not become subject or liable to the payment of any of his debts present or future and so that no creditor present or future of my said son Joseph shall ever be able to take seize or enjoy the same or any part thereof and from and immediately after the decease of my said son Joseph then as for and concerning the said one-sixth part of my said lands Tenements and Premises called Fairhill to and for the use and behoof of the child and children of my said son Joseph born and to be born that shall be living at his death and the lawful issue of such as may be then dead and in such parts shares and proportions and for

such estate and estates use and uses as he my said son Joseph by his last will and testament shall direct limit or appoint and in default of such last will or appointment then in trust to and for the only proper use and behoof of all and every the children of my said son Joseph lawfully begotten born and to be born that shall be living at his death and the lawful issue of such as shall be then dead and their heirs and assigns forever equally to be divided among them part and share alike as tenants in common so always however that such surviving children of my said son Joseph shall take per capita and such issue shall take together in equal parts the share that his, her or their parent would have taken if then living Provided however that no division of this share of my said Fairhill Estate shall be made among the children of my said son Joseph in any event until the youngest of his children born and to be born shall have attained the age of Twenty-one years but that after the decease of my said son Joseph the nett annual rent or income thereof after deducting thereout as aforesaid shall be applied by the said trustees to the maintenance support and education of the children of my said son Joseph at their discretion and according to their best judgment until the youngest of his said children born and to be born shall have attained the age of twenty-one years."

The auditor awarded the fund among the decendants of the sons of testator per stirpes. The descendants of Joseph Parker Norris, Jr., claimed the whole fund and filed exceptions to the report. The exceptions were overruled, Mc-Michael, J., filing the opinion of the court and von Moschzisker, J., filing a dissenting opinion.

*Error assigned* was in dismissing exceptions to auditor's report.

*George Quintard Horwitz* and *John G. Johnson*, for Orville Horwitz et al., appellants.—As an identical clause of the will of Joseph Parker Norris, the elder, has been construed and interpreted by this court and as all the parties now before the court are precisely the same or in privity with the former litigants, the law of the case has been laid down, the will has been interpreted, and the question now before the court has

been decided in favor of the appellants: Horwitz v. Norris, 60 Pa. 261; Durant v. Essex Co., 74 U. S. 107; R. R. Co. v. Schutte, 103 U. S. 118; Jones v. Habersham, 107 U. S. 174 (2 Sup. Ct. Repr. 336); Union Pacific Ry. Co. v. Mason City, etc., Ry. Co., 64 C. C. A. 348 (128 Fed. Repr. 230); Williams v. Chicago, etc., Ry. Co., 79 S. W. Repr. 1167; De Sollar v. Hanscome, 158 U. S. 216 (15 Sup. Ct. Repr. 816); Johnson Steel Street Rail Co. v. Wharton, Jr., & Co., 152 U. S. 252 (14 Sup. Ct. Repr. 608); Ryan v. People of New York, 79 N. Y. 593; Sprague v. Northern Pacific Ry. Co., 100 N. W. Repr. 842; Haven v. Haven, 181 Mass. 573 (64 N. E. Repr. 410); Marsh v. Pier, 4 Rawle, 273; Boltom v. Hey, 168 Pa. 418; Davidson v. Dallas, 15 Cal. 75; Hotaling v. Marsh, 132 N. Y. 29 (30 N. E. Repr. 249); Devine's Est., 199 Pa. 250.

Even if the court be of the opinion that the action you have taken in the case of Horwitz v. Norris, 60 Pa. 261 should not govern and determine this controversy, nevertheless it is contended that under the construction of the will, where the language of the testator is perfectly plain and clear, there can be but one decision in this case, to wit: that the descendants of Joseph Parker Norris, Jr., through the trustees of the share of Joseph Parker Norris, Jr., are entitled to this estate to the exclusion of all the other descendants of Joseph Parker Norris, the elder: Hancock's App., 112 Pa. 532; Schuldt's Estate, 199 Pa. 58; Lewis' Est., 203 Pa. 219.

*Samuel Dickson,* with him *Henry S. Drinkler, Jr.,* and *H. Gordon McCouch,* for Henry Norris et al., appellees.—The province of the court in construing a will is to determine and to give effect to the intention of the testator wherever possible, and the object and purpose of all rules of construction is to ascertain this intention: Middleswarth v. Blackmore, 74 Pa. 414; Sheetz's App., 82 Pa. 213; Tyson's Estate, 191 Pa. 218.

Where the meaning of a will is in any way doubtful, the rule of equality among those by blood equally entitled may be taken as a guide for its interpretation: Malone v. Dobbins, 23 Pa. 296.

Where two clauses in a will seemingly conflict they must be reconciled in accordance with the general intention of the will

if possible, but where irreconcilable, the last must control: Jones's App., 3 Grant, 169.

Two Pennsylvania decisions are directly in point: Lapsley v. Lapsley, 9 Pa. 130, and Bacon's Estate, 202 Pa. 535.

*John J. Ridgway*, for J. Parker Norris, appellee.

*Hampton L. Carson*, with him *Wm. Felix Norris*, for descendants of George W. Norris, deceased.

*M. Hampton Todd*, for Jane McKee Norris, appellee.

*William Brooke Rawle* with him *Francis William Rawle*, for estate of Henry Pepper Norris, deceased.

OPINION BY MR. JUSTICE BROWN, April 22, 1907:

Joseph Parker Norris, the testator, whose will, executed in 1838, is before us on these appeals, died in 1841. He left six sons and seven daughters. Among his possessions were two large estates, known as "Fairhill" and "Sepviva." He gave Sepviva to his daughters and Fairhill was devised to his sons, Charles, Samuel, Isaac, George, Henry and Joseph Parker, Jr. His residuary estate was given to all of his children, with the exception of Joseph, who, for reasons stated by the testator, was excluded from participation in it. The interests in Fairhill devised to Charles, Samuel, Isaac, George and Henry, passed to trustees for each of them under clauses in the will which are identical. The testator created a spendthrift trust for Joseph and devised a one-sixth interest in Fairhill to his executors in trust for him. They were not the trustees for the other five sons. The clause to be now interpreted is as follows: " And upon this further trust that he my said son Henry Norris shall have full power and authority by his last will and testament to devise and settle one of the said five-sixth parts of the lands tenements and premises aforesaid called Fairhill to and on all or any of his issue lawfully begotten in such way and manner and under and subject to such restrictions and limitations or for such estate and estates use and uses as he my said son Henry may deem proper and in default of

such last will or appointment then in trust as to that one of the said five-sixth parts of the said lands tenements and premises called Fairhill to and for the only proper use and behoof of all and every the children of my said son Henry Norris that shall be living at his death and the lawful issue of such as may be then dead and their heirs and assigns forever equally to be divided among them part and share alike as tenants in common so always however that such surviving children of my said son Henry shall take per capita and such issue shall take together in equal parts the share that his her or their parent would have taken if then living and if he my said son Henry shall die without leaving a child or children or a grandchild or grandchildren living at his death then that one of the said five-sixth parts of the lands tenements and premises aforesaid called Fairhill shall go to and be equally divided among my said other sons Charles Samuel Isaac and George or such of them as shall be then living and the Trustees hereinafter mentioned for my said son Joseph Parker Norris junior in equal parts so that the then survivors of my said four sons Charles Samuel Isaac and George shall each take one equal share and the Trustees for my said son Joseph shall take the other equal share thereof each of which said equal shares shall pass to and vest in the Trustees herein appointed and their heirs respectively subject to the restrictions and limitations and for the uses herein declared in like manner as if the same had been so devised in the first instance, that is to say the Trustees for my said sons Charles Samuel Isaac George and Henry to take in trust for the use of my said sons Charles Samuel Isaac and George in equal parts and for the uses hereinbefore mentioned and the Trustees for my said son Joseph to take in trust for the like uses that hereinafter mentioned."

Joseph Parker Norris, Jr., died in January, 1863, leaving children ; Samuel Norris died in December, 1866, without issue ; Charles Norris died in June, 1868, intestate, leaving children ; George Norris died in 1875, testate, leaving children ; Isaac Norris died in July, 1890, testate, leaving children ; and Henry Norris died in December, 1904, without issue.

The fund for distribution represents Henry's one-sixth interest in Fairhill, devised to trustees for him by his father, and the one-fifth of the one-sixth which passed to them for him

upon the death of Samuel. In the court below this fund was awarded to the issue of all of the testator's deceased sons per stirpes. The descendants of Joseph Parker, Jr., claimed the entire fund to the exclusion of the descendants of their father's three brothers, and this claim of the appellants, disallowed below, is now before us. Whether it is to prevail must depend upon the proper interpretation of the will of the testator, which makes the ultimate disposition of the interest in the Fairhill estate enjoyed by Henry at the time of his death.

After the death of Samuel Norris in 1866, proceedings were instituted for the partition of the interest in Fairhill devised by his father in trust for him. The surviving brothers and the representative of Charles, then also deceased, sought to exclude the children of Joseph Parker, Jr., from participation in this estate, contending that, under the limitation in the will of the testator, the share of Samuel in Fairhill was divisible among the surviving sons and the children of Charles, to the exclusion of the children of Joseph Parker Norris, Jr. It was held by this court unanimously that the children of Joseph Parker, Jr., were entitled to a one-fifth share of Samuel's interest: Horwitz v. Norris, 60 Pa. 261. The court, however, divided upon an interpretation of the will, the majority so interpreting it as to give to the appellants what they now claim; and one of their contentions is that, as their right to the one-fifth of Samuel's share enjoyed by Henry and his own one-sixth is res adjudicata, the whole fund must be awarded to them under the doctrine of stare decisis.

It is not necessary for us to decide whether the claim of the appellants is res adjudicata. I do not think it is, because the question now before us was not and could not have been before the court then. Henry was then living, as were Isaac and George, and the question of where his interest should go if he should die childless was not then a matter for the court's determination, for it was not involved in the controversy before it. We differ, however, as to this, but the majority of the court agree in adopting the interpretation of the will as made by Mr. Justice AGNEW, while not binding upon us in deciding the question before us, as the only one that we can now give to the will if we are to read it as the testator wrote it and are to direct that what is left of Fairhill shall go where

he said it should go ; and we adopt bodily what Judge AGNEW says as expressive of our views in this contention. His interpretation is unanswerable, because he read the will just as the testator had written it in words free from all doubt.

If the appellees are to participate in this fund, they must point to their right to do so in the will. The court below properly sustained their contention that it is no part of the residuary estate of the testator, and, if it is not, what clause in the will gives any of it to them ? The only clause to be read in determining where the fund shall go is the one quoted. The clauses as to the other sons under whom the appellees claim are exactly like it.

The words of the testator are that, upon the death of Henry, " without leaving a child or children or a grandchild or grandchildren living at his death then that one of the said five-sixth parts of the lands tenements and premises aforesaid called Fairhill shall go to and be equally divided among my said other sons Charles Samuel Isaac and George or such of them, as shall be then living and the trustees hereinafter mentioned for my said son Joseph Parker Norris junior in equal parts so that the then survivors of my said four sons Charles Samuel Isaac and George shall each take one equal share and the Trustee for my said son Joseph shall take the other equal share thereof." No child of a deceased son can possibly take under these words. They are not contradictory of nor irreconcilable with any other clause of the will, and stand out alone as the clearly expressed intention of the testator, which will not down even before theories of distinguished and learned judges that would override them. The testator twice declares in the same clause, in disposing of Henry's interest in Fairhill, that it shall be divided among the surviving brothers and the trustees of Joseph and what he means by his surviving sons is not open to any other interpretation than his sons who might be living at the time of Henry's death, for he designates them as the sons " then living " and the " then " surviving sons. How, under a theory that, as the testator must have meant equality among his children, any other than their plain and literal meaning can be given to these words, and how they can be held to embrace children of sons who at the death of Henry were not " then living," were not " then " surviving,

ought to be inconceivable to the judicial mind. No theory of what a testator meant can receive judicial consideration, when what he says can have but one meaning, whether read by layman or lawyer.

We need not follow what was said in Horwitz v. Norris, to show that the testator may not have intended equality, as, for instance, in devising Sepviva to his daughters, there is greater inequality, " even more glaring than as to Fairhill; " nor need we refer to the reasons given by the court which may have led the testator to make a distinction in favor of the children of his son Joseph. He had a right to distribute his estate unequally, and he had a right to do so for any reason that may have seemed sufficient to him, without stating it in his will. He must have had some reason for disposing of Fairhill as he did; but whether he had or had not is not a question at all for us. We are to determine only what was his intention as expressed in the words of his will, and if their meaning is free from all doubt, the intention expressed by them must be carried out.

If the testator had intended that the children of a son dying before his childless brother should participate in the interest of such deceased childless son, he naturally would have said that such share should be divided among the surviving sons and the issue of such as were deceased per stirpes. In disposing of Sepviva to his seven daughters and in providing what should become of the share of a daughter dying without issue and without exercising her power of appointment, he gives an interest to the children of surviving daughters, and, in doing so, directs that the lawful issue of any child or children that may be dead shall take with the surviving children such share as their parent would have taken if living. This is only corroborative, but strongly so, that he intended by his words as to Fairhill to include only surviving sons. If he had intended to embrace the issue of deceased sons, he would certainly have said so, as he did in the clause following in which he disposes of Sepviva. But it is not for us by any effort to attempt to show that Henry's share can go only to his surviving brothers and the trustees of Joseph, for such an effort would in itself cast doubt upon the meaning of the words absolutely free from it. They speak for themselves and need no interpretation.

The testator directed that, if his son Henry should die without leaving a child or grandchildren, whatever interest he enjoyed in Fairhill at the time of his death "shall pass to and vest in the Trustees herein appointed and their heirs respectively subject to the restrictions and limitations and for the uses herein declared in like manner as if the same had been so devised in the first instance," and it is argued that this means that, upon the death of a son without issue, his share must be regarded as never having been in trust, but as having been devised by the testator in the first instance to the trustees for the other sons. The answer to this is, that the will directs it to go to the trustees, who are to hold it subject to the same restrictions and for the same uses as the devise of the one-sixth to each of the sons. At the death of Henry, there was no trustee for Charles or Isaac or George. The trust for each brother, except Joseph, ceased at his death with issue. It is further contended that the testator did not intend to exclude the issue of a deceased son from the distribution of a childless son's share because he added: "That is to say the Trustees for my said sons Charles Samuel Isaac George and Henry to take in trust for the use of my said sons Charles Samuel Isaac and George in equal parts and for the uses hereinbefore mentioned and the Trustees for my said son Joseph to take in trust for the like uses that hereinafter mentioned." The meaning of these words is also clear. Immediately preceding them is a direction that the surviving sons shall each take an equal share with the trustees for Joseph of the interest of the deceased childless son, and that he might not be misunderstood as giving such share to the sons absolutely, but to trustees for them, the testator proceeds to say: "That is . . . . the Trustees for my said sons," emphasizing his intention that the shares of the sons, whether coming to them in the first instance upon his death or through the death of a childless brother, should not vest absolutely in them, but should go to the trustees named for them.

While only surviving sons can, through their trustees, participate in the share of a deceased childless son, no such restriction is placed upon the trustees of Joseph's share. What is res adjudicata in Horwitz v. Norris, concurred in by the whole court, is that, as to Joseph's share, though he was dead at the

time Samuel's share was being divided, the trust as to his share continued to exist as a scintilla juris to pass the estate to his descendants. That trust continues, to pass Henry's share in Fairhill into the same channel, and the trustees of Joseph alone can take it, for no other son of the testator survives and nothing passes to his descendants. But one interest out of five that might partake in the share of a son dying without issue now remains, and under the express words of the will, there it must go.

The decree of the court below is reversed, and it is directed that the record be remitted that distribution may be made in accordance with this opinion.

MESTREZAT, J., dissenting:

I concur in holding that the claim of the appellants is not res judicata, but I do not agree with the majority of the court in holding that Henry Norris's share in Fairhill passes entire to the trustees of Joseph Parker Norris, Jr., for the latter's descendants. This, in my judgment and with deference to the views of the majority of the court, is a strained and artificial construction of the will, not warranted by the settled rules of interpretation, and manifestly defeats the intention of the testator. It gives force and effect to an assumed meaning of one part and disregards the explicit language of the other part of the very clause of the devise which passes the estate in controversy. It ignores equality among children, the primal thought of every parent, and creates a distinction among them without any apparent reason whatever, a direct violation of a universally recognized rule of construction. It gives the estate to the descendants of a discredited son to the exclusion of the descendants of other sons who were in equal if not greater favor with the testator.

I think it clear from the language used in this clause of the will and from the tenor of the entire instrument that the testator intended equality among his sons and their descendants in Fairhill, and that upon the death of either of the sons without issue his share should vest in the trustees, distributable among the remaining sons and the issue of deceased sons. The able and convincing opinion of Mr. Justice SHARSWOOD, concurred in by Chief Justice THOMPSON, in Horwitz v. Norris,

60 Pa. 261, leaves nothing to be said in support of the conclusion of the common pleas in this case, and for the reasons there given I would affirm the decree of the court below.